PECKHAM *v.* COZZENS, Assignee.

COZZENS, Assignee, *v.* PECKHAM.

COZZENS, Assignee *v.* SMITH.

(*District Court, D. Rhode Island.* August 20, 1880.)

1. BANKRUPTCY—FRAUDULENT MORTGAGE—BURDEN OF PROOF.—In order to defeat the claims of a mortgagee to the proceeds of the mortgaged real estate of a bankrupt mortgagor, the assignee must establish by a preponderance of evidence (1) that the mortgagor was insolvent at the time of the execution and delivery of the mortgage, (2) that the mortgagee had reasonable cause to believe that such mortgagor was insolvent when he accepted the mortgage, and (3) that such mortgagee knew that said mortgage was made in fraud of the bankrupt law.

In Equity.
*William P. Sheffield*, for Peckham and Smith.
*Samuel R. Honey*, for Cozzens, Assignee.

KNOWLES, D. J. By agreement of counsel these causes have been submitted to the court as really one cause, and the court been authorized and requested to consider them as one, although in fact, according to the record, each one of them is entitled to be treated as unconnected with any other of the series. That two of them are designated * * * * as cross-bills, is an immaterial fact. Under the arrangement it seems proper here to premise that I deem myself authorized to state the case, and the questions presented at the hearing, and my rulings or findings upon those questions, as briefly as may be consistent with intelligibility and clearness. The parties, in submitting these causes, of their own motion, unchecked by the court, have adopted a novel course; and that

the court, in disposing of them, should do likewise, is but a natural sequence.

The case presented to the court is substantially this: William J. Cozzens, as assignee in bankruptcy of E. Truman Peckham, has in his hands and control the sum of about $3,475, the proceeds of a parcel of real estate to which he became entitled as assignee, subject, as is alleged, to two mortgages thereon, executed by said Peckham within the two months next preceding the commencement of proceedings in bankruptcy against him. The assignee refusing to recognize these mortgages as valid, by order of the court the estate was sold at auction, free and discharged of the claims of the mortgagees, and the proceeds, less expenses of sale, paid over to the assignee, to be in his hands, subject to the just claims, if any, of the said mortgagees.

Soon after the sale, one of those mortgagees, Wm. F. Peckham, a brother of the bankrupt, filed his bill against the said assignee and the bankrupt, claiming that out of said proceeds he should be paid the amount of his mortgage claim, (about $1,200,) and the other mortgagee, John G. Smith, a brother-in-law of the bankrupt, filed his bill, claiming that out of said proceeds he should be paid the amount of his mortgage claims, (about $2,773.46.) Whereupon the said assignee filed what are styled cross-bills against the said mortgagees, respectively. To all these bills, answers and replications were made as required by the rules, and evidence taken—the parties themselves giving testimony as witnesses before the commissioner.

The mortgagees, in their bills and answers, assume and aver that their claims are just and undisputable, and the mortgages to them unimpeachable, despite the provisions of the bankrupt law; while, on the other hand, the bills and answers of the assignee involve and embody a denial of the allegations contained in the bills and answers of the mortgagees, and explicitly charge, in answers as well as in bills, as follows: "That the said E. Truman Peckham was insolvent at the time of the execution and delivery of the mortgage deeds in question, and that the said mortgagees, respectively, had rea-

sonable cause to believe the said E. Truman Peckham to be insolvent when they accepted said deeds, and knew that said mortgages were made in fraud of an act entitled, 'An act to establish a uniform system of bankruptcy throughout the United States,' passed March 2, 1867, and the several acts in amendment thereof and in addition thereto."

As conceded and assumed in argument at the bar, so must it be conceded here, that here arises the pivotal point of the cause or series of causes under discussion. Had there been no sale of the land, and the assignee had filed his bill to set aside the said mortgages as void, upon him would have rested the burden of sustaining by satisfactory proof the threefold allegation above quoted, to say nothing of the absence of any allegation as to the intent of the bankrupt. The same burden rests upon him here. His right to retain said proceeds, as against the demand of the mortgagees, depends upon his establishing by a preponderance of evidence the three aforesaid allegations; it being understood to be an admitted fact that the intent of the bankrupt was to secure his creditor brother, and brother-in-law. To this conclusion I have arrived after a deliberate consideration and study of the pleadings and evidence submitted to me, and therefore proceed to consider the questions presented:

1. Was the said E. Truman Peckham insolvent at the time of the execution and delivery of the mortgage deeds in question?

As already stated, the assignee is bound to satisfy the court, by a preponderance of evidence, that the bankrupt was insolvent at the date specified. This, I must adjudge, he has failed to do. Indeed, it may be questioned whether any evidence even tending to support this allegation was offered, other than a copy of a writ of attachment, which was admitted under an objection which I am constrained here to adjudge well founded, and an offer to produce from the files of the district court the original inventory and list of debts filed by the bankrupt, Peckham, at a certain stage of this bankruptcy proceeding in his case, also admitted under objection, now adjudged well taken.

2. Did the said mortgagees, respectively, have reasonable cause to believe said E. Truman Peckman to be insolvent when they accepted their deeds?

An affirmative answer to this question cannot be given, in view of the evidence—rather the absence of evidence—even tending, in any appreciable degree, to justify such an answer. What might have been elicited from some of the witnesses under a searching examination, or cross-examination, we are left to imagine; but as their testimony, given upon written interrogatories, is presented to the court, any other than a negative answer to the question would involve a charge of wilful false swearing against more than one of the witnesses and parties litigant.

3. Did said mortgagees know that said mortgages were made in fraud of the bankrupt law?

Upon the point here presented no ruling or finding is required. My finding upon the first two questions, as above stated, being in favor of the mortgagees, a ruling upon this third question becomes unnecessary. Still, as the point was raised, and fully discussed at the bar, and has been duly considered. I will here add that upon this point, also, my finding is in favor of the mortgagees.

And here, before closing, I will add, as not irrelevant, that I find no sufficient ground for the claim of the mortgagees, one or both, that their mortgages were made and received in virtue of a valid parol agreement of a date three or more months prior to the twenty-second of January, 1878; and therefore, as to that point, my finding is in favor of the assignee.

The result is that the court adjudges that the assignee fails to establish his claim to retain the said proceeds, as against the claim of the said mortgagees; that no party recover costs; that unless within — days the parties can agree upon the amount justly due said mortgagees, it be referred to a master to inquire, ascertain, and report as to said amounts; and that proper decrees, in conformity with this opinion, be prepared and entered in the several causes above enumerated.